### In re JOSEPH M. EATON BUILDERS, INC., Debtor.

James A. LEWIS, Esq. Trustee, Plaintiff,

v.

CUSTOM HEATING CO. & Robert Devine, t/d/b/a Custom Heating Co., Defendants.

Bankruptcy No. 87–765. Adv. No. 87–358.

United States Bankruptcy Court, W.D. Pennsylvania.

March 23, 1988.

James A. Lewis, Pittsburgh, Pa., trustee.

James F. Hartzell, Rothman, Gordon, Foreman & Groudine, P.A., Pittsburgh, Pa., for trustee.

H. Barry Bier, Pittsburgh, Pa., for defendants.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD,
Bankruptcy Judge.

The matter presently before the Court is a Complaint for Avoidance and Recovery for Preferential Transfer filed by James A. Lewis, Esq. (hereinafter Trustee) against Custom Heating Company and Robert Devine, t/d/b/a Custom Heating Company (hereinafter Defendants). The Court finds that Defendants received an avoidable preferential transfer under 11 U.S.C. § 547 and must turn over the amount received to the Trustee.

### Facts

Joseph M. Eaton Builders, Inc. (hereinafter Debtor) was in the construction business. Defendants, as subcontractors of Debtor, furnished certain labor and materials in connection with heating and air conditioning systems constructed on premises commonly known as 203 Springhouse Drive, Clairton, PA 15025. Defendants had concluded all work on the property at 203 Springhouse Drive in June or July of 1986 but continued to work on some of Debtor's other projects until November of 1986. In January of 1987 Defendants confessed judgment against Debtor with respect to four different construction jobs. On February 26, 1987, Debtor sold 203 Springhouse Drive to Donald R. and Rita J. Huckle for a stated consideration of $205,000.00. *See* Trustee Exhibit 5 (Settlement Statement and Addendum). The settlement statement and addendum thereto show the transfer from Mr. and Mrs. Huckle to Debtor of $205,000.00 and payment by Debtor to Defendants of the sum of $5,250.00 from the proceeds. Defendants then released the 203 Springhouse Drive property from their judgment lien but retained their judgment lien against other properties. *See* Trustee Exhibits 9, 10, 11 and 12. Twenty-eight days later, on March 26, 1987, Debtor filed a voluntary Chapter 7 petition under the Bankruptcy Code. On September 22, 1987, the Trustee filed the within adversary action and trial was held on January 26, 1988.

### Discussion

Section 547 of the Bankruptcy Code provides in relevant part:

> (b) Except as provided in subsection (c) of this section, the Trustee may avoid any transfer of an interest of the Debtor in property (1) to or for the benefit of a creditor; (2) for an account of an antecedent debt owed by the Debtor before such transfer was made; (3) made while the Debtor was insolvent; (4) made (A) on or within 90 days before the date of the filing of the petition ...; (5) that enables such creditor to receive more than such creditor would receive if (A) the case were a case under Chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

It is not disputed that Defendants are creditors and that payment to them occurred within 90 days before the filing of Debtor's Chapter 7 petition. It further is not disputed that Debtor was insolvent at the time Defendants obtained their confessed judgment, which event also fell within

the 90–day preference period,[1] and at the time Debtor paid Defendants at the closing. Defendants do not deny that they received more than a Chapter 7 distribution would provide to general unsecured creditors in this case. Defendants argue, however, that because they had an inchoate mechanics lien on the real estate located at 203 Springhouse Drive they were entitled to payment from the sale proceeds and that, therefore, they must prevail against the Trustee who cannot avoid a mechanics lien which is a statutory lien. They also argue that because they received payment in exchange for releasing their right to file a mechanics lien they gave new value, thereby defeating the Trustee's ability to avoid the transfer.

In Pennsylvania, a mechanics lien is a creation of statutes, there having been no such lien at common law. *Samango v. Hobbs,* 167 Pa.Super. 399, 75 A.2d 17 (1950). The Pennsylvania statute enables a subcontractor to perfect a lien in property for which it furnished labor or materials in the erection or construction, alteration or repair of an improvement if the amount of the claim exceeds $500.00. 49 P.S. § 1301. However in order to perfect a mechanics lien strict compliance with the governing statutory provisions is required. A valid claim cannot be effected without such strict compliance. *Giansante v. Pascuzzo,* 205 Pa.Super. 28, 206 A.2d 340, 342 (1965). If the statutory procedures are not complied with the "lien is wholly lost". *Associated Lumber & Mfg. Co. v. Mastroianni,* 173 Pa.Super. 310, 98 A.2d 52, 54 (1953); *Hoffman Lumber Co. v. Mitchell,* 170 Pa. Super. 326, 85 A.2d 664, 667 (1952). *See also Arcady Farms Milling Co. v. Sedler,* 367 Pa. 314, 80 A.2d 845, 847 (1951) (where remedy or procedure is provided for by statute, statutory provisions shall be strictly pursued and exclusively applied). Because the right to file a mechanics lien claim is a statutory right and in derogation of the common law, legislation with respect thereto must be strictly construed. *Samango v. Hobbs,* 167 Pa.Super. 399, 75

A.2d 17 (1950); *Tesauro v. Baird,* 232 Pa. Super. 185, 335 A.2d 792, 793 (1975).

Moreover, the plain language of the statute itself requires compliance with its terms in order to effect and perfect a mechanics lien. Section 1501 of Pennsylvania's Mechanics Lien Law provides that "[n]o claim ... shall be valid unless, in addition to the formal notice required by subsection (b) of this section, [the subcontractor] shall have given to the owner ... a written preliminary notice of his intention to file a claim...." 49 P.S. § 1501(a). Section 1501(b) further provides that "[n]o claim by a subcontractor ... shall be valid unless, at least thirty (30) days before the same is filed, [subcontractor] shall have given to the owner a formal written notice of his intention to file a claim...." Section 1501(c) lists the required contents of the notice and subsection (d) provides for service of the notice. Section 1501 represents the two-hundred-year-old Commonwealth law with respect to mechanics liens. *See Vulcanite Portland Cement Co. v. Allison,* 220 Pa. 382, 69 A. 855, 856 (1908).

Based on the foregoing, the Court finds that the mere right to file a mechanics lien does not create such a lien in Pennsylvania. There was no evidence introduced which would establish that Defendants provided any formal notice of their intentions to file a claim. Defendants' failure to take any steps whatsoever towards compliance with the notice provisions of the statute requires that their claim be denied status as a mechanics lien. *See Associated Lumber; Hoffman Lumber, supra.*

Furthermore, Defendants ceased work on the realty at 203 Springhouse Drive in June or July of 1986. Under the Mechanics Lien Law of Pennsylvania a subcontractor has four months from the date of completion of work within which to file a claim. 49 P.S. § 1502(a)(1). Defendants contend that the applicable date to be used in calculation of the four-month period is November 1986 when it performed its final work for Debtor on any property and not on the

---

1. Because the judgment lien itself was obtained within the 90–day preference period, it is subject to the Trustee's avoiding powers, as is the

payment itself which was based upon that judgment.

property in question. Again Defendants' argument is devoid of merit[2] as the statute permits a mechanics lien to be filed only against the property on which the work was performed. Section 1306(b) expressly requires a claimant to file a separate claim with respect to each "improvement[ ] which [does] not form all or part of a single business or residential plant". *See Meyers Plumbing and Heating Supply Co. v. Caste*, 350 Pa.Super. 482, 504 A.2d 942 (1986) (separate mechanics lien claims must be filed with respect to each townhouse in a construction project). *See also* 49 P.S. § 1301 ("[e]very improvement and the estate or title of the owner in the property shall be subject to a lien"); §§ 1502, 1503(8) (requiring that a claim describe the improvement and the property). *See also id.* at § 1504 (prohibiting amendment of a claim to substitute different property); § 1502(b) (where improvements are made on property lying in more than one county, a claim filed in any county is effective only against that portion of the property lying in that county).

The Pennsylvania Mechanics Lien Law has remained essentially unchanged for nearly two hundred years and was "founded upon the theory that those who furnished labor and materials in the construction of a building should have the right to file a lien against it—that is, against the structure itself into which their labor and materials entered—in preference to other general creditors...." *Vulcanite Portland Cement Co. v. Allison, supra*, 69 A. at 856–57. Therefore, Defendants could have pursued a mechanics lien against the property at 203 Springhouse Drive only until October or November 1986, four months after Defendants ceased work on that property in June or July of 1986. When Defendants obtained the confessed judgment and payment thereon their right to file a mechanics lien had long expired and in light of the strict construction given

the mechanics lien statute by Pennsylvania courts, Defendants lost completely any right to claim a mechanics lien. Accordingly, they are general unsecured creditors in this bankruptcy case.

For the same reason, Defendants' argument that they gave new value to Debtor in releasing their right to a mechanics lien in exchange for payment is devoid of merit since Defendants had nothing to so exchange.

In view of the foregoing, the Court finds that all the elements of § 547(b) have been established and that the Trustee is entitled to avoid the transfer at issue.

An appropriate Order will be entered.

2. However, even if we were to accept Defendants' assertion, *arguendo,* that the time for filing of their mechanics lien claim ran until March 9, 1987 (Brief on Behalf of Custom Heating at page 3), in order to have a valid, perfected mechanics lien, Defendants would have to have sent a preliminary written notice to Debtor-owner 30 days prior thereto of their intention to file. 49 P.S. § 1501(b). That 30–day period expired on February 7, 1987, well before Defendants were paid from the sale proceeds. Defendants, therefore, have not shown entitlement to a mechanics lien even under the facts they claim to be most favorable to them.